DETERMINED IN THE

# SUPREME COURT

OF

# WASHINGTON

[No. 15767.  Department Two.  July 26, 1920.]

NANCY V. SAMPSON, *Respondent*, v. JOHN W. SAMPSON, *Appellant.*[1]

DIVORCE (104)—CUSTODY OF CHILD—MODIFICATION OF DECREE.  A divorce decree awarding the custody of a child to the mother will not be modified upon conflicting evidence where several trial judges refused the modification and charges of improper conduct by the mother were not substantiated but were sufficiently explained.

GUARDIAN AND WARD (13)—SALES OF REAL ESTATE—CONFIRMATION. A guardian's sale of real estate, without notice, under powers granted in a decree of divorce granting the property to the child of the divorced parties, will not be confirmed upon a showing that money was needed to take care of the mortgage and taxes and that the house was often vacant and needed repairs, where the mother testified that the father interfered with renting the house and that the income derived from the amount realized on a sale would not equal the amount received by renting the property.

SAME (1-4)—REMOVAL OF GUARDIAN OF ESTATE.  There was no abuse of the court's discretion in removing appellant as guardian of his child's estate after divorce granted to the parties, where the interests of the child would be benefited by a change, since the child's interests must be the chief consideration.

DIVORCE (104)—CUSTODY OF CHILD—VISITATION BY PARENT—MODIFICATION OF DECREE.  A divorced father cannot complain of an order modifying a decree of divorce so as to allow him to see his child only by having it brought to the juvenile court, it being clear that

[1]Reported in 191 Pac. 840.

Appeal from orders of the superior court for King county, Gilliam and Tallman, JJ., and John Arthur, judge *pro tempore,* entered September 23, 1919, November 28, 1919, and August 14, 1919, in divorce proceedings. Affirmed.

*Walter G. Kienstra,* for appellant.

*Winter S. Martin* and *Ray M. Wardall,* for respondent.

Holcomb, C. J.—The parties to this action were formerly husband and wife, and, commencing with the proceeding in which their divorce was decreed, they have been before the superior court a number of times on account of various controversies concerning their minor child, Mildred Louise Sampson, and certain property. Appellant is guardian of the estate, and respondent guardian of the person of their child.

John W. Sampson brings this appeal from orders of the court refusing to confirm appellant's attempted sale, without notice, under a leave to sell granted in the original decree, of community real property previously decreed to belong to the child; refusing to modify the decree of divorce so as to give him the custody and guardianship of the child, or to give him the right generally to sell the property for the child's benefit, should the necessity arise; and modifying the decree of divorce so as to prohibit appellant from seeing the child except through the medium of the juvenile court, and removing him as guardian of the child's estate.

The parties intermarried in 1904, in the state of West Virginia, and have, since 1906, resided in King

county, Washington.   The minor child is the only
issue born of the marriage.   The real property con-
sists of two lots in the city of Seattle and the struc-
tures thereon, these being a five-room cottage on the
front of the premises and a small three-room cottage,
originally intended as a woodshed, on the rear of the
lots.   Respondent and the child were living in the
smaller house during most of the time the difficulties
of the parties were before the court; while the larger
house, on the front of the lots, was rented and the
rental used to make payments on a mortgage and for
taxes.   The property seems to have been acquired
largely by the earnings of appellant, who is a laborer.
The court found the real property to be of the value
of about $2,000, with a mortgage thereon of about
$200, and the household goods and equipment to be
worth about $500.

Counsel for appellant suggests that the following
three questions are to be determined:   Whether re-
spondent is morally fit to have the custody of the child;
whether the court should have confirmed the sale of
the real property attempted to be made by appellant;
and whether the court should have removed appellant
as guardian of the child's estate.

A careful scrutiny of the record reveals much testi-
mony in which there is sharp conflict on practically
every question.   Assertions on the one side are met
with denials on the other; and, as is too often true in
such cases, there are many accusations and recrimina-
tions.   Several affidavits were filed to substantiate cer-
tain allegations made.

Since the original decree of divorce, the mother has
had custody of the child, and, although several judges
of the trial court saw the parties and heard the testi-
mony in the various proceedings that were instituted,

none of them saw fit to modify the original decree to the extent of taking the child away from its mother and giving it to the father. True, respondent was charged with certain acts of an improper or immoral nature, but we do not think the charges were substantiated by the evidence. It was alleged that she remained away from home late nights and left the child alone in the house; but respondent explained that there were times when, because of appellant's failure to promptly pay the monthly sums of money toward the support of the child, which the court had ordered him to do, she found it necessary to go out nights to work in various capacities and places; and her testimony went to show that, on such occasions, the child was left with a neighbor and was well cared for.

In support of his contention that the sale of the real property should have been confirmed, appellant urged the necessity of caring for the mortgage, taxes and probable assessments for local improvements, such as paving, grading and sewers; that the house was often vacant; that it was in need of repairs which would be expensive; and other reasons why it would be advisable to sell the property and devote the proceeds to the care of the child. But respondent claimed that appellant by his acts interfered with the renting of the house when she had a tenant ready and willing to pay a good rental; and that it would be poor business policy to sell the property and reinvest the money derived from its sale, when the return on such investment could not possibly equal the sums that ought to be secured by renting the property. She insisted that such income would enable her to take care of taxes and similar expenses. The trial court was evidently of the same opinion.

In regard to the removal of appellant as guardian of his child's estate, it is argued that this was done by

the court contrary to appellant's wishes and without any proper showing that a change would be agreeable to him. However, there is evidence sufficient to justify the court in finding that the interests of the child would best be safeguarded by putting the guardianship of her estate in the hands of some one other than appellant; and, after all, the child's interests must be the chief consideration. We are not convinced that the court abused its discretion in this respect, or that the appointment of a new guardian for the child's estate is likely to prove in any way detrimental to either the child or appellant.

On the question of appellant's objection to being allowed to see his child only by having it brought to the juvenile court, it is clear that the trial court, in view of testimony showing that, on several occasions, attempts at visitation had failed because of difficulties and misunderstandings, was but endeavoring to find the most convenient way for appellant to see his child regularly.

We are unwilling, nor do we think it is necessary, to set out in this opinion one or two more or less disagreeable details appearing in the record of this case, as in so many cases of a similar nature. No good can be done by the recital in an opinion of this kind of allegations concerning the frailties of human nature, especially when the truth of some of them must of necessity be doubtful. Each case like this is usually dependent upon its own particular facts for the proper solution of the problems it presents. The trial court has the advantage of an environment which no record can exactly reproduce here. This case is before us for trial *de novo* and we have tried the whole case upon its merits. Our perusal of the record has failed to convince us that the evidence was insufficient to support the conclusions reached by the trial court.

We find no error, and the orders appealed from are accordingly affirmed.

FULLERTON, MOUNT, TOLMAN, and BRIDGES, JJ., concur.